RECEIVED
By Michelle Henken at 3:00 pm, Dec 02, 2021

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA** )
)
**v.** ) **CRIMINAL NO.** 21-cr-215-CG
)
**ROSEANNA TAYLOR** )

**PLEA AGREEMENT**

The defendant, **ROSEANNA TAYLOR**, represented by her counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

**RIGHTS OF THE DEFENDANT**

1. The defendant understands her rights as follows:

   a. To be charged by indictment returned by a Grand Jury;

   b. To be represented by an attorney;

   c. To plead not guilty;

   d. To have a trial by an impartial jury;

   e. To confront and cross-examine witnesses and to call witnesses and produce other evidence in her defense; and

   f. To not be compelled to incriminate herself.

**WAIVER OF RIGHTS AND PLEA OF GUILTY**

2. The defendant waives rights c through f, listed above, and pleads guilty to:

   a. Count 1 of the information, charging a violation of Title 18, United States Code, Section 371, Conspiracy.

b. Counts 2 through 5 of the information, charging violations of Title 18, United States Code, Sections 2 and 1343, Wire Fraud (Aiding and Abetting).

c. Counts 6 through 8 of the information, charging violations of Title 18, United States Code, Sections 2 and 1028A(a)(1), Aggravated Identity Theft (Aiding and Abetting).

3. The defendant understands that the statements she makes under oath in the plea of guilty must be completely truthful and that she can be prosecuted for making false statements or perjury, or receive a perjury enhancement at sentencing, for any false statements she makes intentionally in this plea of guilty.

4. The defendant expects the Court to rely upon her statements here and her response to any questions that she may be asked during the guilty plea hearing.

5. The defendant is not under the influence of alcohol, drugs, or narcotics. She is certain that she is in full possession of her senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6. The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. She has discussed the facts of the case with her attorney, and her attorney has explained to the defendant the essential legal elements of the criminal charge which has been brought against her. The defendant's attorney has also explained to the defendant the attorney's understanding of the United States' evidence and the law as it relates to the facts of her offense.

7. The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge beyond a reasonable doubt. The defendant and her counsel have discussed possible defenses to the charge. The defendant believes that her attorney has represented her faithfully, skillfully, and diligently, and she is completely satisfied with the legal advice of her attorney.

8. A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct. Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and her counsel are not part of this agreement and are not agreed to by the United States.

9. This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court will impose. The defendant is pleading guilty because she is guilty.

10. The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## PENALTY

11. The maximum penalty the Court could impose as to Count 1 of the Information is:

    a. 5 years imprisonment;

    b. A fine not to exceed $250,000;

    c. A term of supervised release of 3 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, she could be imprisoned for the entire term of supervised release;

    d. A mandatory special assessment of $100.00; and

    e. Such restitution as may be ordered by the Court.

12. The maximum penalty the Court could impose as to Counts 2 through 5 of the Information is:

    a. 20 years imprisonment;

    b. A fine not to exceed $250,000;

    c. A term of supervised release of 3 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, she could be imprisoned for the entire term of supervised release;

    d. A mandatory special assessment of $100.00; and

    e. Such restitution as may be ordered by the Court.

13. The maximum penalty the Court could impose as to Counts 6 through 8 of the Information is:

a. Mandatory 2 years imprisonment, which must run consecutive to Counts 1 through 5 in this case. This is the mandatory sentence that must be imposed for these Counts of conviction;

b. A fine not to exceed $250,000;

c. A term of supervised release of 1 year, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, she could be imprisoned for the entire term of supervised release;

d. A mandatory special assessment of $100.00; and

e. Such restitution as may be ordered by the Court.

**SENTENCING**

14. The Court will impose the sentence in this case. The United States Sentencing Guidelines are advisory and do not bind the Court. The defendant has reviewed the application of the Guidelines with her attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that she will not be allowed to withdraw her guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range.

15. The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within

any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

16. The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

17. Both the defendant and the United States are free to allocute fully at the time of sentencing.

18. The defendant agrees to tender $800.00 to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of her sentencing.

**RESTITUTION**

19. Pursuant to 18 U.S.C. §§ 3556 and 3663(A), restitution is mandatory. The defendant agrees to make full restitution in an amount of **$127,663.26**.

**FORFEITURE**

20. The defendant agrees to confess the forfeiture to the United States of all properties which represent proceeds of her criminal activities or which facilitated any aspect of these illegal activities.

**FINANCIAL OBLIGATIONS**

21. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

**UNITED STATES' OBLIGATIONS**

22. The United States will not bring any additional charges against the defendant related to the facts underlying the Information and will move to dismiss any remaining charges against the defendant once sentence is imposed in this case. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

**APPLICATION OF USSG § 5K1.1 AND/OR FED. R. CRIM. P. 35**

23. The defendant understands and agrees that she has no right to cooperate, and that the decision whether to allow her to cooperate is reserved solely to the United States in the exercise of its discretion. If the United States agrees to allow the defendant to cooperate, and if the defendant agrees to cooperate, the following terms and conditions apply:

a. The defendant shall fully, completely, and truthfully respond to all questions put to her by law enforcement authorities regarding the underlying facts of the offense(s) with which she is charged, as well as the underlying facts of any criminal offense(s), state or federal, of which she has information or knowledge.

b. The defendant acknowledges that she understands that she shall provide truthful and complete information regarding any offense about which she has knowledge or information regardless of whether law enforcement authorities question her specifically about any such offense. This provision requires the defendant to divulge all information available to her even when law enforcement authorities do not know about the defendant's involvement, knowledge or information relating to any particular offense. This requirement extends to any and all persons about whom the defendant has such knowledge or information.

c. The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which her cooperation may be deemed relevant by any law enforcement authority. The defendant agrees to fully comply with all instructions from law enforcement authorities regarding the specific assistance she shall provide. This includes, but is not limited to, consenting to monitored and/or recorded telephone conversations, participating in undercover operations, testifying completely and truthfully

before any grand jury, at any pre-trial proceeding, during any trial, and any post-trial proceeding.

d. If the United States deems it necessary, the defendant may be required to take a polygraph examination(s) which will be administered by a government polygrapher. The defendant agrees that the results of any polygraph examination may be used by the United States in its evaluation of whether there has been substantial assistance, and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

e. The defendant agrees to turn over to the United States any and all documents, tapes and other tangible objects which are in her possession or under her control and which are relevant to her participation in and knowledge of criminal activities, regardless of whether it relates to the charged offense. This obligation is a continuing one and includes materials that the defendant may acquire, obtain or have access to after the execution of this agreement.

f. The defendant also agrees to identify the assets of any other person which were obtained through or facilitated the defendant's illegal activities or the illegal activities of another.

g. If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal

offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance. The defendant also understands that, should she provide untruthful information to the United States at any time, or fail to disclose material facts to the United States at any time, or commits a new criminal offense, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend that the defendant receive a sentence at the low end of the advisory guideline range.

h. The United States and the defendant agree that any breach of this agreement by the defendant, including but not limited to committing a new offense, failing to cooperate, intentionally withholding information, giving false information, committing perjury, failing to identify assets obtained by her from her illegal activities or obtained by others associated with her or of which she has knowledge, refusing to take a polygraph examination, failing a polygraph examination, or refusing to testify before the grand jury or at any judicial proceeding, would:

(1) permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters underlying the Information; and

(2) permit the United States to initiate and proceed with the prosecution on any other charges arising from a breach of this agreement. The United States will not be limited, in any respect, in the use it may make against the defendant of any information provided by the defendant during her breached cooperation. Such breach will constitute a waiver of any claim the defendant could make under the United States Constitution, the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or any statute or case law by which the defendant seeks to suppress the use of

such information or any evidence derived from such information.

i. Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declaration, false statement, and obstruction of justice, should the defendant commit any of these offenses during her cooperation. The defendant acknowledges and agrees that the information that she discloses to the United States pursuant to this agreement may be used against her in any such prosecution.

j. The United States and the defendant agree that the defendant will continue her cooperation even after she is sentenced in the instant matter. Her failure to continue her cooperation will constitute a breach of this agreement, and the defendant agrees that under such conditions, the United States will be free to reinstate the charges and the prosecution of the charges in the Information, which are to be dismissed in accordance with this agreement. Under these circumstances, the defendant expressly waives any rights she may have under the statute of limitations and the speedy trial provisions.

**LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK**

24. As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a

motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge her guilty plea, conviction, or sentence in any district court or appellate court proceedings.

a. **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

(1) any sentence imposed in excess of the statutory maximum;

(2) any sentence which constitutes an upward departure or variance from the advisory guideline range.

The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

25. If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

26. The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

27. If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

28. The defendant understands that if she breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant. In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that she might have under the Sixth Amendment and/or Speedy Trial Act.

29. In addition, if the defendant is released from detention prior to sentencing, she understands that the United States will no longer be bound by this agreement if she violates any condition of her release prior to sentencing or prior to serving her sentence after it is imposed.

## ENTIRETY OF AGREEMENT

30. This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Respectfully submitted,
SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: 11/30/2021

J. Bishop Ravenel
Assistant United States Attorney

Date: 11/22/2021

Sean P. C. For
George Martin
Assistant United States Attorney
Deputy Chief, Criminal Division

I have consulted with my counsel and fully understand all my rights with respect to the offense charged in the Information pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: 11/19/21

Roseanna Taylor
**ROSEANNA TAYLOR**
Defendant

I am the attorney for the defendant. I have fully explained her rights to her with respect to the offense(s) charged in the Information in this matter. I have carefully reviewed every part of this Plea Agreement with her. To my knowledge, her decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, her decision to stipulate to the facts is an informed, intelligent and voluntary one.

Date: 11/19/21

Carlos Williams
Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **CRIMINAL NO.** |
| | ) | |
| **ROSEANNA TAYLOR** | ) | |

**FACTUAL RESUME**

The defendant, **ROSEANNA TAYLOR**, admits the allegations of Counts 1 through 8 of the Information.

**ELEMENTS OF THE OFFENSE**

**ROSEANNA TAYLOR** understands that in order to prove a violation of Title 18, United States Code, Section 371, as charged in Count 1 of the Information, the United States must prove:

First: Two or more persons in some way agreed to try to accomplish a shared and unlawful plan;

Second: The Defendant knew the unlawful purpose of the plan and willfully joined in it;

Third: During the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and

Fourth: The overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

**ROSEANNA TAYLOR** understands that in order to prove a violation of Title 18, United States Code, Section 1343, as charged in Counts 2 through 5 of the Information, the United States must prove:

First: The Defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

Second: The false pretenses, representations, or promises were about a material fact;

Third: The Defendant acted with the intent to defraud; and

Fourth: The Defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

**ROSEANNA TAYLOR** understands that in order to prove a violation of Title 18, United States Code, Section 1028A(a)(1), as charged in Counts 6 through 8 of the Information, the United States must prove:

First: The Defendant knowingly transferred, possessed, or used another person's means of identification;

Second: Without lawful authority; and

Third: During and in relation to the eligible felony alleged in the information (Counts 2, 3, and 5, respectively).

**ROSEANNA TAYLOR** understands that regarding the Wire Fraud violations (Counts 2 through 5) and Aggravated Identity Theft violations (Counts 6 through 8), the United States has charged aiding and abetting liability under 18 U.S.C. § 2, which provides:

> It's possible to prove the Defendant guilty of a crime even without evidence that the Defendant personally performed every act charged. Ordinarily, any act a person can do may be done by directing another person, or "agent." Or it may be done by acting with or under the direction of others. A Defendant "aids and abets" a person if the Defendant intentionally joins with the person to commit a crime. A Defendant is criminally responsible for the acts of another person if the Defendant aids and abets the other person. A Defendant is also responsible if the Defendant willfully directs or authorizes the acts of an agent, employee, or other associate. But finding that a Defendant is criminally responsible for the acts of another person requires proof that the Defendant intentionally associated with or participated in the crime – not just proof that the Defendant was simply present at the scene of a crime or knew about it. The United States

must prove that the Defendant was a willful participant and not merely a knowing spectator.

**OFFENSE CONDUCT**

Defendant, **ROSEANNA TAYLOR**, admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for **ROSEANNA TAYLOR's** plea of guilty. The statement of facts does not contain each and every fact known to **ROSEANNA TAYLOR** and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement.

**ROSEANNA TAYLOR** admits to each and every fact set forth in the Information in this case, particularly including paragraphs 1 through 20.

**Summary**

From in or about May 2017 through in or about January 2019, **ROSEANNA TAYLOR** worked for a medical professional staffing company based in Mobile, Alabama, within the Southern Division of the Southern District of Alabama. In that role, she obtained personal pedigree information, including means of identification as defined under 18 U.S.C. § 1028(d)(7), of certain medical professionals. Beginning in or about 2018, **ROSEANNA TAYLOR** began creating fake identification documents using these means of identification, along with additional fraudulent documents, to be used to obtain fraudulent loans. From in or about 2018 through at least on or about September 22, 2020, **ROSEANNA TAYLOR,** both alone and in concert with others, used the means of identification of other people, unlawfully and without their permission, to obtain fraudulent loans including for monies, automobiles, and other items of monetary value. **ROSEANNA TAYLOR** provided both the means of identification and fraudulent loan documents

to other members of the conspiracy in order to assist them in obtaining fraudulent loans and monies and other items of monetary value. Upon being confronted by federal investigators in February 2021, **ROSEANNA TAYLOR** indicated her interest in resolving all of her criminal conduct in federal court and admitted to many of the crimes. For many of the loans, the Equifax credit reporting system was used, resulting in wires and signals being transmitted in interstate commerce to computer servers located outside of the state of Alabama.

In total, the fraud in this case totals approximately $369,562.10 of intended loss, with an actual loss of approximately $127,663.26. **ROSEANNA TAYLOR** acted as a leader and organizer of the criminal organization, and acted, both alone and with others, to cause more than 10 victims to be criminally wronged through her crimes.

**Predication**

This investigation originated when Mobile Police Department (MPD requested assistance with the investigation of **ROSEANNA TAYLOR**.

**ROSEANNA TAYLOR Interviews**

**February 5, 2021, Interview**

On February 5, 2021, USSS Special Agent (SA) Chris Graham and SA Josh Adams interviewed **ROSEANNA TAYLOR** at the Mobile Metro Jail. Prior to conducting the interview, SA Graham advised **ROSEANNA TAYLOR** of her Miranda rights, which she acknowledged and waived in writing. During the interview of **ROSEANNA TAYLOR**, she acknowledged her involvement in forging and counterfeiting checks and counterfeiting documents, which supported the cashing of forged and counterfeited checks. Additionally, **ROSEANNA TAYLOR** admitted to applying for loans in the names of unknowing subjects

with false documents, which **ROSEANNA TAYLOR** admitted to generating. **ROSEANNA TAYLOR** expressed her desire to avoid a lengthy judicial process. **ROSEANNA TAYLOR** stated she hoped for an expedited judicial process where she could plead guilty to all charges because she was in fact guilty.

**ROSEANNA TAYLOR** was questioned as to how, when, and why she had committed the crimes to which she was admitting guilt. **ROSEANNA TAYLOR** stated approximately three years prior (2018) she began falsifying documents to forge and counterfeit checks and falsely obtain loans. **ROSEANNA TAYLOR** stated she initially began these crimes for funds to support herself and her family. **ROSEANNA TAYLOR** told SA Graham she previously worked for medical professional staffing company in Mobile, Alabama, in an administrative position for approximately one year. **ROSEANNA TAYLOR** detailed that the company provided in-home care to individuals with varying levels of need via a nurse database. **ROSEANNA TAYLOR** stated she used personal information, such a personal identifiers, contained in the nurse database to fraudulently obtain loans and generate and negotiate forged and/or counterfeited checks. **ROSEANNA TAYLOR** said she maintained possession of the company laptop after she left her position at the business, and regularly accessed and used the information contained on the laptop to commit fraud. **ROSEANNA TAYLOR** stated another co-conspirator would also use information from the laptop/database to counterfeit or forge checks. **ROSEANNA TAYLOR** stated she knows this due to allowing and observing that other co-conspirator record information from the laptop/database. **ROSEANNA TAYLOR** added that she would generate false temporary state identifications, pay stubs, utility bills, and insurance cards to facilitate her check and loan fraud. **ROSEANNA TAYLOR** stated she paid for a

subscription of BeenVerified, a pay for service background check company, which provides consumer initiated criminal backgrounds and people search services. **ROSEANNA TAYLOR** stated she would query subjects from the database to obtain security questions, previous addresses, etc.

**July 14, 2021, Interview**

On July 14, 2021, SA Graham conducted a follow-up interview of **ROSEANNA TAYLOR** at the Mobile Metro Jail. Prior to conducting the interview, SA Graham advised **ROSEANNA TAYLOR** of her Miranda rights, which she acknowledged and waived in writing.

During the interview of **ROSEANNA TAYLOR**, she acknowledged her involvement in forging and counterfeiting checks and counterfeiting documents, which supported the cashing of forged and counterfeited checks. **ROSEANNA TAYLOR** stated she would make up seven digit numbers for the Alabama driver licenses she counterfeited. **ROSEANNA TAYLOR** stated if the number turned out to be a genuine Alabama driver license number, it would have been a coincidence.

**ROSEANNA TAYLOR** was presented with driver license photographs, which were received pursuant to subpoenas issued to financial institutions that were used as supporting documents to obtain fraudulent loans. After looking at the photographs, **ROSEANNA TAYLOR** identified herself and two other co-conspirators. **ROSEANNA TAYLOR** stated any identification that she made, which had a black female's face, would have been used by another co-conspirator, with one exception that **ROSEANNA TAYLOR** described.

SA Graham presented **ROSEANNA TAYLOR** with all the fraud identified as having been committed in this case. **ROSEANNA TAYLOR** specifically identified who committed the

fraud with respect to each business. **ROSEANNA TAYLOR** stated she would always make the counterfeit identifications for any fraud committed by others, with a few exceptions. **ROSEANNA TAYLOR** described the roles of various co-conspirators in the fraud scheme.

**ROSEANNA TAYLOR** further admitted to her role and the involvement of others in the crimes set forth immediately below, which lists the identity theft victim's initials above the lending institution that bore the financial loss:

**I. ROSEANNA TAYLOR (Alone, Committed Entire Crime)**

a. D.K.
   i. Keesler Federal Credit Union (fraud of $50,007.03, loss of $27,007.03)
b. R.A.
   i. Team Gunther Kia (fraud of $38,484.00, no loss)
   ii. First Heritage Credit (fraud and total loss of $3,449.85)
   iii. One Main Financial (fraud and total loss of $8,031.10)
c. M.A.
   i. Regional Finance (fraud and total loss of $5,538.24)
d. M.Z.
   i. Regional Finance (fraud and total loss of $6,914.38)
e. R.L.
   i. Regional Finance (fraud and total loss of $6,902)
f. L.A.
   i. Dean McCrary Audi & Porsche (fraud of $97,000, no loss)
g. E.N.
   i. First Heritage Credit (fraud and total loss $3,101.09)

**II. ROSEANNA TAYLOR and other co-conspirators (ROSEANNA TAYLOR provided victim information and other co-conspirators committed remainder of fraud)**

a. R.A.
   i. Keesler Federal Credit Union (fraud of $59,262.46, loss of $12,816.18)
   ii. 1st Franklin Financial (fraud and total loss of $5,783.34)
b. P.D.
   i. 1st Franklin Financial (fraud and total loss of $2,383.90)
   ii. Furniture Fair via 1st Franklin Financial (fraud and total loss of $5,000)
c. J.S.
   i. Regional Finance (fraud and total loss of $5,720.43)
d. M.R.

i. Regional Finance (fraud and total loss of $6,455.55)

e. L.A.

i. Keesler Federal Credit Union (fraud and total loss of $17,301.50)

f. S.A.

i. Sandy Sansing Ford Lincoln (fraud of $36,968.56, no loss)

g. Y.R.

i. Regional Finance (fraud and total loss of $5,720.43)

h. K.S.

i. Regional Finance (fraud and total loss of $5,538.24)

## Victim Interviews

SA Graham contacted several of the victims in the above cases. R.A. indicated that the crimes against R.A. had catastrophic effects and denied the transactions noted herein. S.A., through a family member, denied the transactions noted above and noted S.A. was the victim of identity theft. R.L. indicated R.L. was the victim of identity fraud and denied the transaction noted herein, stating that additional accounts were also opened in R.L.'s name.

## Criminal Events

The below chart summarizes the criminal events committed by **ROSEANNA TAYLOR** and others in this case.

| Count / Overt Act | Date (On or About) | Location | Description | Defendant's Role | Actual Loss Amount | Intended Loss Amount |
|---|---|---|---|---|---|---|
| Overt Act ¶ 12(a) | March 29, 2019 through April 8, 2019 | Mobile, AL | Loan fraud against OneMain Financial for the receipt of monies and items of monetary value, unlawfully using the means of identification of another person, whose initials are R.A. and whose full name is known to the United States Attorney. | Committed the fraud acting alone. | $8,031.10 | $8,031.10 |
| Overt Act ¶ 12(b) | June 13, 2019 through June 20, 2019 | Mobile, AL | Loan fraud against 1st Franklin Financial Corporation for the receipt of monies and items of monetary value, unlawfully using the means of identification of another person, whose initials are P.D. and whose full name is known to the United States Attorney. | Generated fraudulent documents, including the means of identification of another person, and provided them to another co-conspirator, who completed the fraud. | $7,383.90 | $7,383.90 |

| Count / Overt Act | Date (On or About) | Location | Description | Defendant's Role | Actual Loss Amount | Intended Loss Amount |
|---|---|---|---|---|---|---|
| Counts 2 (Wire Fraud) and 6 (Aggravated Identity Theft) and Overt Act ¶ 12(c) | July 28, 2019 through July 30, 2019 | Mobile, AL | Loan fraud against Regional Finance for the receipt of monies and items of monetary value, unlawfully using the means of identification of another person, whose initials are R.L. and whose full name is known to the United States Attorney. | Committed the fraud acting alone. | $6,902.00 | $6,902.00 |
| Overt Act ¶ 12(d) | August 20, 2019 through August 21, 2019 | Mobile, AL | Loan fraud against Regional Finance for the receipt of monies and items of monetary value, unlawfully using the means of identification of another person, whose initials are J.S. and whose full name is known to the United States Attorney. | Generated fraudulent documents, including the means of identification of another person, and provided them to another co-conspirator, who completed the fraud. | $5,720.43 | $5,720.43 |
| Overt Act ¶ 12(e) | August 22, 2019 | Mobile, AL | Loan fraud against Regional Finance for the receipt of monies and items of monetary value, unlawfully using the means of identification of another person, whose initials are M.A. and whose full name is known to the United States Attorney. | Committed the fraud acting along with another person. | $5,538.24 | $5,538.24 |
| Overt Act ¶ 12(f) | September 9, 2019 | Mobile, AL | Loan fraud against Regional Finance for the receipt of monies and items of monetary value, unlawfully using the means of identification of another person, whose initials are Y.R. and whose full name is known to the United States Attorney. | Provided means of identification of victim to another co-conspirator, who completed the fraud. | $5,720.43 | $5,720.43 |
| Overt Act ¶ 12(g) | September 10, 2019 through September 11, 2019 | Bay Minette, AL | Loan fraud against Regional Finance for the receipt of monies and items of monetary value, unlawfully using the means of identification of another person, whose initials are M.R. and whose full name is known to the United States Attorney. | Provided means of identification and fraudulent identification document of victim to another co-conspirator, who completed the fraud. | $6,455.55 | $6,455.55 |
| Overt Act ¶ 12(h) | October 9, 2019 through October 11, 2019 | Mobile, AL | Loan fraud against Regional Finance for the receipt of monies and items of monetary value, unlawfully using the means of identification of another person, whose initials are K.S. and whose full name is known to the United States Attorney. | Provided means of identification of victim to another co-conspirator, who completed the fraud. | $5,538.24 | $5,538.24 |
| Overt Act ¶ 12(i) | September 9, 2019 through October 22, 2019 | Bay Minette, AL | Loan fraud against Regional Finance for the receipt of monies and items of monetary value, unlawfully using the means of identification of another person, whose initials are M.Z. and whose full name is known to the United States Attorney. | Committed the fraud acting along with another person. | $6,914.38 | $6,914.38 |

| Count / Overt Act | Date (On or About) | Location | Description | Defendant's Role | Actual Loss Amount | Intended Loss Amount |
|---|---|---|---|---|---|---|
| Overt Act ¶ 12(j) | November 2, 2019 through November 4, 2019 | Mobile, AL | Loan fraud against Dean McCrary Audi & Porsche for the purchase of a 2019 Porsche Cayenne automobile, unlawfully using the means of identification of another person, whose initials are L.A. and whose full name is known to the United States Attorney. | Committed the fraud acting alone. | $0 | $97,000 |
| Counts 3 (Wire Fraud) and 7 (Aggravated Identity Theft)<br><br>and<br><br>Overt Act ¶ 12(k) | April 21, 2020 through April 23, 2020 | Daphne, AL | Loan fraud against Sandy Sansing Ford Lincoln for the purchase of a 2019 Chevrolet Camaro automobile, unlawfully using the means of identification of another person, whose initials are S.A. and whose full name is known to the United States Attorney. | Committed the fraud acting along with another person. | $0 | $36,968.56 |
| Overt Act ¶ 12(l) | June 25, 2020 through June 26, 2020 | Slidell, LA | Loan fraud against Keesler Federal Credit Union for the purchase of a 2017 Infinity Q60 automobile and additional monies and items of monetary value, unlawfully using the means of identification of another person, whose initials are D.K. and whose full name is known to the United States Attorney. | Committed the fraud acting alone. | $27,007.03 | $50,007.03 |
| Count 4<br><br>and<br><br>Overt Act ¶ 12(m) | August 4, 2020 through August 5, 2020 | Saraland, AL | Loan fraud against First Heritage Credit for the receipt of monies and items of monetary value, unlawfully using the means of identification of another person, whose initials are R.A. and whose full name is known to the United States Attorney. | Committed the fraud acting alone. | $3,449.85 | $3,449.85 |
| Overt Act ¶ 12(n) | August 6, 2020 through August 10, 2020 | Wetumpka, AL | Loan fraud against 1st Franklin Financial Corporation for the receipt of monies and items of monetary value, unlawfully using the means of identification of another person, whose initials are R.A. and whose full name is known to the United States Attorney. | Generated fraudulent documents, including the means of identification of another person, and provided them to another co-conspirator, who completed the fraud. | $5,783.34 | $5,783.34 |
| Count 5 (Wire Fraud) and Count 8 (Aggravated Identity Theft)<br><br>and<br><br>Overt Act ¶ 12(o) | August 8, 2020 through September 22, 2020 | Daphne, AL | Loan fraud against Team Gunther Kia for the purchase of a 2021 Kia Telluride automobile and additional monies and items of monetary value, unlawfully using the means of identification of another person, whose initials are R.A. and whose full name is known to the United States Attorney. | Committed the fraud acting alone. | $0 | $38,484.00 |
| Overt Act ¶ 12(p) | August 13, 2020 | Mobile, AL | Loan fraud against First Heritage Credit for the receipt of monies and items of monetary value, unlawfully using the means of identification of another person, whose initials are E.N. and whose full name is known to the United States Attorney. | Committed the fraud acting alone. | $3,101.09 | $3,101.09 |

| Count / Overt Act | Date (On or About) | Location | Description | Defendant's Role | Actual Loss Amount | Intended Loss Amount |
|---|---|---|---|---|---|---|
| Overt Act ¶ 12(q) | August 13, 2020 through August 27, 2020 | Biloxi, MS | Loan fraud against Keesler Federal Credit Union for the purchase of a 2019 Audi automobile and additional monies and items of monetary value, unlawfully using the means of identification of another person, whose initials are R.A. and whose full name is known to the United States Attorney. | Generated fraudulent documents, including the means of identification of another person, and provided them to another co-conspirator, who completed the fraud. | $12,816.18 | $59,262.46 |
| Overt Act ¶ 12(r) | August 18, 2020 | Biloxi, MS | Loan and credit card fraud against Keesler Federal Credit Union for the receipt of monies and items of monetary value, unlawfully using the means of identification of another person, whose initials are L.A. and whose full name is known to the United States Attorney. | Provided means of identification of victim to another co-conspirator, who completed the fraud. | $17,301.50 | $17,301.50 |
| | | | | **Total Amounts:** | **$127,663.26** | **$369,562.10** |

**Interstate Wires**

Regarding each of the wire fraud and aggravated identity theft counts (Counts 2 through Eight), the company providing the loan used the Equifax credit bureau to validate the credit worthiness of the apparent loan applicant. Equifax completes these credit reports using wire transactions and does not have computer servers located in the state of Alabama. Accordingly, loan applications making use of Equifax credit reporting resulted in wire and signal transactions that affected interstate commerce. **ROSEANNA TAYLOR** was aware that the Equifax reports were a component of the fraud by virtue of her use of a similar service to develop the fraudulent documents and due to the need to authorize the credit reports to obtain the loans.

Regarding Counts Two through Eight, **ROSEANNA TAYLOR** signed the Equifax form or credit release statement on behalf of other people, whose identities she stole and used without their approval. Additionally, **ROSEANNA TAYLOR** signed credit card reporting authorization forms for additional loan fraud efforts and also submitted documents for several loans online, which bears upon her knowledge.

**Loss Amount**

In total, the intended loss in this case totals approximately $369,562.10, with an actual loss of approximately $127,663.26.

**Sentencing Guidelines**

**ROSEANNA TAYLOR** admits the factual and legal aspects of this case support the imposition of the following guideline provisions and understands that additional guidelines enhancements may apply as well:

| | |
|---|---|
| Base Offense Level – U.S.S.G. § 2B1.1(a)(1) | + 7 |
| Loss Amount More than $250,000.00 – U.S.S.G. § 2B1.1(b)(1)(G) | + 12 |
| Ten or more victims – U.S.S.G. § 2B1.1(b)(2)(A) | + 2 |
| Organizer, Leader, Manager, or Supervisor – U.S.S.G. § 3B1.1(c) | + 2 |

AGREED TO AND SIGNED.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: 11/30/2021

J. Bishop Ravenel
Assistant United States Attorney

Date: 11/22/2021

George Martin
Assistant United States Attorney
Deputy Chief, Criminal Division

Date: 11/30/2021

ROSEANNA TAYLOR
Defendant

Date: 11/30/2021

Carlos Williams
Attorney for Defendant